# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

JASON ADAMS,

               Petitioner,        :       Case No. 1:17-cv-572

  - vs -                            District Judge Susan J. Dlott
                                     Magistrate Judge Michael R. Merz

WARDEN,
  Allen/Oakwood Correctional Institution

                                    :

               Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case was brought *pro se* by petitioner Jason Adams to obtain relief from his conviction in the Lawrence County Court of Common Pleas on a charge of complicity to aggravated robbery. The Petition was filed August 30, 2017[1] (ECF No. 1). On order of Magistrate Judge Bowman (ECF No. 2), Respondent has filed the State Court Record (ECF No. 4) and a Return of Writ (ECF No. 5). The pleadings became complete when Petitioner filed his Reply (ECF No. 7). The case has recently been transferred to the undersigned to help balance the Magistrate Judge workload in the Western Division of this Court (ECF No. 8).

---

[1] Adams claims he mailed the Petition on August 9, 2017, and Respondent does not dispute that claim. Under the "mailbox" rule, Adams is entitled to a filing date of August 9, 2017. *Houston v. Lack,* 487 U.S. 266 (1988); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). The difference is not material.

**Procedural History**

Petitioner was indicted March 25, 2014, by the Lawrence County Grand Jury on one count of aggravated robbery of Charles Jones. Adams was convicted by a trial jury and sentenced to nine years imprisonment. He timely appealed to the Fourth District Court of Appeals, raising six assignments of error. Among them were his claim that he received ineffective assistance of trial counsel because his attorney did not object to references to the guilty pleas of his co-defendants. The Fourth District overruled four assignments of error, including the ineffective assistance of trial counsel assignment, found one moot because it had been resolved by the parties, and remanded for proper advice to Adams on the terms of post-release control. *State v. Adams,* 2016-Ohio-7772, 84 N.E.3d 155(4th Dist.) ("*Adams I*"). Adams did not appeal to the Supreme Court of Ohio.

On June 14, 2016, while his direct appeal was pending, Adams filed a petition for post-conviction relief under Ohio Revised Code § 2953.21. The trial court dismissed the petition, and Adams again appealed to the Fourth District. That court affirmed dismissal of the petition. *State v. Adams*, Case No. 16CA23, 2017-Ohio-509 (4th Dist. Lawrence Feb. 6, 2017) ("*Adams II*"). This time, Adams appealed to the Supreme Court of Ohio, but that court declined jurisdiction. *Adams II*, 149 Ohio St. 3d 1434, 2017-Ohio-4396 (2017).

Adams then filed his Petition here, pleading one ground for relief:

> **Ground One:** Deprivation of my Sixth and Fourteenth Amendments to the United States Constitution- Ineffective assistance of counsel.
>
> **Supporting Facts:** Counsel at trial failed to defend petitioner with evidence of inconsistencies of statements of co-defendant and victim, as well as attack the credibility of the detective in the case. Also the Common Pleas court did not submit findings of fact and conclusions of law when it denied petitioner's post-conviction.

(Petition, ECF No. 1, PageID 6).

# Analysis

Although Adams has stated his claims in one Ground for Relief, Respondent reads the Petition as raising two claims: ineffective assistance of trial counsel; and denial of due process by the state trial court's failure to file findings of fact and conclusions of law in post-conviction. Adams accepts that reading and argues the two claims separately (ECF No. 7). This Report will also analyze the two claims separately.

**Claim One: Ineffective Assistance of Trial Counsel by Failure to Cross-examine**

Adams asserts his defense counsel provided ineffective assistance by not attacking the credibility of the co-defendants, the victim, and the investigating detective. This was not part of the ineffective assistance of trial counsel claim he raised on direct appeal. Rather, he first presented it to the Ohio courts in his petition for post-conviction relief.

> Defendant was deprived effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution as well as Article I Section 10 of the Ohio Constitution because counsel rendered ineffective assistance when failing to defend the defendant with evidence of inconsistencies of statements of co-defendant and victim, as well as attack the credibility of the detective in this case.

(Petition, State Court Record, ECF No. 4, PageID 258). In denying relief on that claim, the trial court recited the governing federal standard from *Strickland v. Washington,* 466 U.S. 668 (1984), which requires that a defendant show professionally deficient performance by his trial attorney and that

the deficiency prejudiced his case (Judgment Entry, State Court Record, ECF No. 4, PageID 276, *et seq.*). Judge Cooper noted that the choice of what witnesses to call or what lines of questioning to pursue "falls within the area of trial strategy." *Id.* at PageID 277. Without adverting to any evidence Adams had filed[2], he concluded "the Defendant failed to make a prima facie argument or argue substantive grounds for relief as required by [Ohio] R.C. 2953.21(C)." *Id.*

On appeal, Adams urged reversal because the trial court had not held a hearing or provided findings of fact and conclusions of law. The Fourth District summarized the trial evidence, which it had just reviewed on direct appeal, and noted that Adams himself had testified. *Adams II*, 2017-Ohio-4396. Judge McFarland noted that "[t]he defense strategy was to attempt to cast doubt on the credibility of the investigating officers and Scott Lewis [one of the co-defendants]. However, the jury must have found the circumstantial evidence overwhelming and Appellant not to be a credible witness." *Id.* at ¶ 6. Thus, the Fourth District credits trial counsel for pursuing the same strategy Adams advances. Adams's claim before this Court, then, appears to be that counsel did not pursue that strategy hard enough, and did not use all the tools available to him (Petition, ECF No. 1, PageID 6).

The Fourth District then held that before granting a hearing on a post-conviction petition, the trial court must determine that substantive grounds for relief exist per Ohio Revised Code § 2953.21(C). "Substantive grounds for relief exist and a hearing is warranted if the petitioner produces sufficient credible evidence that demonstrates the petitioner suffered a violation of the petitioner's constitutional rights," *Adams II*, 2017-Ohio-519 at ¶ 11, quoting *In re B.C.S.*, 4th Dist.

---

[2] The only evidence attached to the Petition for post-conviction relief in the State Court Record as filed here is Adams's own affidavit.

4

Washington Case No. 07CA60, 2008-Ohio-5771, ¶ 11 (Oct. 29, 2008).

Judge McFarland also cited Ohio's doctrine of *res judicata* as applied to criminal cases, derived from *State v. Perry*, 10 Ohio St. 2d (1967). *Adams II*, 2017-Ohio-519 at ¶ 12. Noting that *res judicata* bars a claim in post-conviction that could have been raised on direct appeal, he noted also that "the doctrine of *res judicata* does not apply where the petitioner relies on competent, relevant, and material evidence, outside the trial court's record, and such evidence must not be evidence that existed or was available for use at the time of trial." *Id.* at ¶ 14, citing *State v. Melhado*, 10th Dist. Franklin Case No. 13AP-114, 2013-Ohio-3547, ¶ 10 (Aug. 15, 2013), and *State v. Braden*, 10th Dist. Franklin No.02AP-954, 2003-Ohio-2949, ¶ 27 (10th Dist. Jun. 10, 2003). The court then listed twenty evidentiary items attached to the Petition for post-conviction relief, *id*. at ¶ 15, and then concluded that:

> We are unable to determine whether all of the memoranda and reports submitted with Appellant's petition were submitted with discovery and actually made part of the trial court record. However, it is clear that all the memoranda and reports were submitted to defense counsel and available for use at trial.
>
> A petition for post-conviction relief is not the proper vehicle to raise issues that were or could have been determined on direct appeal.

*Id.* (citations omitted). The Fourth District concluded that the trial judge could not have relied on *res judicata* at the time he filed his decision because the direct appeal was still pending. At the time of the appeal from denial of post-conviction, however, the direct appeal judgment was final. The court accordingly concluded:

> We find, as in [*State v.*] *Black* [2016-Ohio-3104, (4th Dist. Ross May 17, 2016)] that Appellant's current claims of ineffective assistance of trial counsel could have and should have been raised in the direct appeal of his conviction. Appellant had different counsel in his direct appeal and did not raise an ineffective assistance of counsel

5

> claim. Although the trial court could not have relied on res judicata because Appellant's direct appeal was still pending at the time the petition was dismissed, it is applicable. Like Black, Appellant was well aware of his counsel's actions and/or claimed inactions. Like Black, Appellant generally claims he provided his counsel with evidence and information which his counsel failed to use at trial. Appellant, like Black, was aware of these claims and others and could have included them in his direct appeal. For the foregoing reason, we find the claims Appellant raised his post-conviction petition are barred by the doctrine of res judicata.

*Id.*, ¶ 21.

**The Asserted *Res Judicata* Procedural Default Bar**

Respondent asserts that Adams's claim of ineffective assistance of trial counsel is procedurally defaulted by his failure to raise it on direct appeal (Return, ECF No. 5, PageID 466-67.) That is, Respondent relies on the Fourth District's holding that the ineffective assistance of trial counsel issues raised in post-conviction could have been raised on direct appeal and are barred by *res judicata* because they were not so raised.

Adams does not quarrel with Respondent's statement of the general law of procedural default, but contends it does not apply to this case because his claims could not have been raised on direct appeal (Traverse, ECF No. 7, PageID 475).

Adams is correct that, even if his appellate attorney had had these investigative materials, he could not have placed them in the trial record because that record is "frozen" at the time of the verdict. But that does not dispose of the Fourth District's *res judicata* determination, for that court reads Ohio *res judicata* law as applying not only to evidence that was actually in the appeals record, but evidence that was in the hands of defense counsel as the time of trial, whether or not ever made

6

part of the appellate record.

Instead, Adams cites Sixth Circuit law to the effect that state court reliance on *res judicata* is not a procedural bar if that reliance is "misplaced." (Traverse, ECF No. 7, PageID 473-76, citing *White v. Mitchell*, 431 F.3d 517 (6th Cir. 2005); *Hill v. Mitchell*, 400 F.3d 308 (6th Cir. 2005); and *Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001)).

Federal habeas corpus courts are bound by state court interpretation of state law. "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825) (Marshall C.J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. 2018)(Thapar, J., concurring). Whereas an appellate court on habeas review decides federal law questions *de novo*, the federal reviewing court is generally bound by state court interpretations of state law. *Railey v. Webb*, 540 F.3d 393 (6th Cir. 2008), *quoting Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005); *Vroman v. Brigano*, 346 F.3d 598 (6th Cir. 2003); *Caldwell v. Russell*, 181 F.3d 731, 735-36 (6th Cir. 1999); *Duffel v. Dutton,* 785 F.2d 131, 133 (6th Cir. 1986).

Certainly in this case, the Fourth District definitively interpreted Ohio criminal *res judicata* doctrine as barring Petitioner's claim because all the material on which he relied was, by his own admission, in the hands of his trial attorney before trial. Adams principally relies on *White v. Mitchell, supra*, for bypassing *res judicata* when state court reliance on it is "misplaced." White was a capital case and it relies on two prior capital cases, also cited by Adams, *Hill v. Mitchell,*

7

*supra*, and *Greer v. Mitchell, supra*. In none of those three cases was the evidence outside the record relied on in post-conviction of the same character as the evidence here, to wit, available to the trial attorney. In *White*, the post-conviction evidence was an affidavit from the mitigation expert, Dr. Smith, as well as affidavits from two additional experts. 431 F.3d at 527. In *Hill* as well, the post-conviction evidence relied on was an affidavit of the mitigation specialist which was prepared after conclusion of the trial. 400 F.3d at 313. In *Greer*, the Sixth Circuit noted that:

> The petition for post-conviction relief includes forty-six exhibits, the majority of which were affidavits from individuals who allegedly had information favorable to petitioner but who were not contacted by trial counsel. They include family members who attest that they could have placed petitioner's personal history and character in a favorable context; Larry Dehus, an expert who would have disputed the state's evidence regarding bloody footprints found near the victim's body; James Eisenberg, a psychologist who would have testified concerning the shortcomings of trial counsels' preparation for mitigation; trial counsel, who indicate that their notes reveal that certain jurors excused by the prosecution were black; and a juror who states that evidence of petitioner's background would have "been helpful and may have affected the jury's decision."
>
> While the probative value of this evidence is difficult to assess in retrospect, it seems clear that this material and the arguments that logically flow from it are outside the trial record.

264 F.3d at 675.

All of these capital cases reflect situations where the post-conviction evidence did not exist at the time of trial. All of them reflect the preference of the federal courts to reach the merits in death penalty cases. In none of them did the state courts give detailed analysis to the Ohio *res judicata* doctrine, as the Fourth District did here.

Based on these distinctions from the cited precedent, the Court should conclude that Adams's ineffective assistance of trial counsel claim is barred by his procedural default in not presenting it on direct appeal.

**Alternative Analysis of the Merits of Adams's Ineffectiveness Claim**

Alternatively, if the Court were to reject the analysis above on the *res judicata* procedural bar and reach the merits, it should still dismiss the Petition because the trial judge's decision[3] on the merits is not an unreasonable application of *Strickland*.

As a factual matter, Adams claims that the material attached to his post-conviction petition "was never provided to his appellate counsel, and was only obtained by his family[4] when they had continuously pressed trial counsel for the findings of the private investigator." (Traverse, ECF No. 7, PageID 476).

Adams also does not dispute the Fourth District's finding that these materials were in the hands of his trial attorney at the time of trial. He indeed asserts that:

> Petitioner's trial counsel was in possession of certain investigative documentation that he simply kept to himself. Trial counsel never placed his private investigator on a witness stand to learn the information that was obtained by him, never used investigative reports that clearly attack the truthfulness and credibility of not only the alleged co-defendant of the petitioner, but the victim himself as well as the lead detective in the case.

*Id.* at PageID 475.

Attached to his Petition in this Court are a number of items apparently from the file of Jeremy Pennington, the private investigator hired by retained defense attorney Warren Morford,

---

[3] Because the Fourth District applied a procedural bar and did not reach the merits, this Court looks through the Fourth District's decision to the last reasoned decision on the merits, that of Judge Cooper. *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991).

[4] Adams gives this Court no evidence of when trial counsel turned the investigator's file over to his family.

9

Jr. Because the filed State Court Record does not contain these items, the only source this Court has for what was attached in state court is the listing in Judge McFarland's opinion. The Magistrate Judge assumes, subject to rebuttal by further proof of the state court record, that Adams filed the same materials here as he had filed in the state court.

Adams's claim, quoted above, is that it was ineffective assistance of trial counsel not to put Pennington on the witness stand to have him testify about all the information he had found undermining the credibility of the State's witnesses.

This theory fails to come to grips with the realities of evidence law. Judge Cooper notes that decisions about what witnesses to call and what lines of inquiry to pursue are generally considered part of trial strategy which usually is committed to the sound discretion of a trial attorney. But trial strategy must be formed in the context of the rules of evidence. Those rules have been built up over time in the common law and are now codified in the Ohio Rules of Evidence adopted by the Supreme Court of Ohio.

Adams's suggestions about what use Morford should have made of what Pennington found must be measured against the rules of evidence. To start with, Morford could not have done what Adams first suggests: put Pennington on the witness stand to testify to the content of his reports. The reports are hearsay, and having them repeated by Pennington on the witness stand would not have cured the hearsay problem. Nor would Pennington have been allowed to give his opinion on the credibility of any of the witnesses; opinions of that sort "invade the province of the jury" and are not permitted under Ohio R. Evid. 704

In his Memorandum in Support of the Petition, Adams makes detailed arguments about what use Morford should have made of the Pennington materials (ECF No. 1-2). Examination of

at least some of these in the order in which they are presented will illustrate the evidence rule problems with using them as Adams suggests.

Exhibit E to the Petition (ECF No. 1-2, PageID 77-78) is a report of Pennington's interview with Ironton Acting Chief of Police Chris Bowman, in which Bowman purports to comment on prior discipline of Detective Ross, the principal investigator in this case, and "allude[s] to incompetence of Mr. Ross and Mitch Crum," another detective assigned to the case. Neither Exhibit E nor Pennington's oral testimony about its contents would have been admissible because it was hearsay. If Acting Chief Bowman had been called as a State's witness and had testified that Ross and Crum were good detectives Morford could have confronted him with this prior inconsistent statement about their competence, but there is no indication Bowman was called as a State's witness. Obviously, a competent defense attorney would have had qualms about calling the Chief of Police in the defense case in chief.

Adams next discusses Exhibit I (ECF No. 1-2, PageID 104-05), which is a report of a Pennington interview with a Lucas Morris. Morris is reported to have said Detective Ross was "mad about being called a liar" in connection with this case, denied that his involvement was "personal," and made statements about someone whom everybody knew to be a "Jim Carey." (Memorandum, ECF No. 1-2, PageID 53). Adams argues "[t]rial counsel had this evidence and simply faied to effectively utilize it in Petitioner's defense." *Id.* But Adams makes no argument about how this evidence could have been used. Again, the report and Pennington's testimony about its content are inadmissible hearsay. If Lucas Morris had been a trial witness and denied making the statements, then he could have been confronted with them as prior inconsistent statements, But it is not reported to the Court that Morris was a trial witness. To ask Ross on

11

cross-examination if in fact he was angry about being called a liar (we are not told by whom), this would not likely have undermined his credibility with the jury: most people are angry at being called a liar.

Adams next discusses Exhibit J (Memorandum, ECF No. 1-2, PageID 53; Exhibit J is PageID 106-07). The fist page of the Exhibit is a report from Pennington to Morford stating that the attached page is a "type-written statement from Jim Carry" that Pennington received on May 31, 2014. *Id*. at PageID 106 The attachment is not signed, but reports a conversation with Scott Lewis and Tom Adams, identified as Petitioner's father. In the conversation, Lewis denied any involvement of himself or Adams in the robbery. Again, neither the report nor the statement by Carry would be admissible because they are hearsay. Lewis was the key State's witness a trial. He obviously could be cross-examined about his own prior statements at any time of his own non-involvement or Adams'. But if he had denied making this particular statement of non-involvement, neither Carry's statement nor his oral testimony would have been admissible to prove he did in fact make the statement because of Ohio R. Evid. 616(C).

Exhibit L (ECF No. 1-2, PageID 110-12) is a Pennington report of an interview with Josh and Tracy Wheeler who had employed co-defendants Scott Lewis and Ed Hampton who had a low opinion of Lewis and Hampton's "trustworthiness." Adams opines that these opinions on trustworthiness would have been admissible as character evidence (Memorandum, ECF No. 1-2, PageID 54). The Exhibit does include comments about Lewis's drug activity, suspected thefts, and bad temper. It does not contain a direct opinion on reputation for truthfulness. There is no indication the Wheelers would have been willing to testify as character witnesses against Lewis; Pennington did not ask them that question and indeed recorded his interview covertly. While

12

Lewis' credibility was obviously a key issue, there is no indication any testimony the Wheelers would have given would have been anything but remote. It would have been well within sound trial strategy to decide not to call them.

"Finally," Adams concludes[5], "attached and marked as Exhibit-M [(ECF No. 1-2, PageID 113)] is a Memorandum drafted by Pennington which describes his findings and the summation of his investigation." (Memorandum, ECF No. 1-2, PageID 55). As to this Report, Adams states again that

> Trial counsel should have presented Pennington as a witness as his testimony would have been critical in multiple respects including but not limited to impeachment of other witness testimony, establishing an accurate time line of alleged events and raising a reasonable doubt as to the veracity and objectivity of the investigation.

*Id.* at PageID 56  But Pennington could not have testified to the contents of Exhibit M, which contain impressions and evaluations of evidence, because Ohio law does not permit opinion evidence of a private investigator of this sort.

Thus, upon examination of the materials relied on by Adams and of his arguments for them, the Magistrate Judge concludes there would have been multiple sound reasons, based both on strategy and on absolute bars in the rules of evidence, why trial counsel would not or could not have presented these materials. Therefore, Judge Cooper's decision that it was not ineffective assistance of trial counsel to fail to introduce these materials is not an objectively unreasonable application of *Strickland*. Consequently, it is entitled to deference under 28 U.S.C. § 2254(d).

---

[5] Adams does not discuss the other items submitted as exhibits.

**Claim Two: Lack of Findings of Fact and Conclusions of Law**

Adams claims he was denied due process of law when the trial court did not make findings of fact and conclusions of law on his post-conviction petition (Traverse, ECF No. 7, PageID 484). He recognizes that the requirement for findings of fact and conclusions of law is a matter of state statute under Ohio Revised Code § 2953.21, but claims the Ohio Supreme Court has "attached due process rights" to this requirement. *Id.* at PageID 485 citing *State v. Hester*, 45 Ohio St. 2d 71 (1976). The opinion in *Hester*, which was handed down eight years before the federal ineffective assistance of trial counsel standard was adopted in *Strickland*, is largely a discussion of what that standard should be. Paragraph 1 of the Syllabus[6] in *Hester* reads:

> R.C. 2953.21, as amended by the addition of subsection (C), mandates the trial court to make and file findings of fact and conclusions of law as to the reasons for dismissal of and as to the grounds for relief relied upon in a petition for postconviction relief. (*State v. Lester*, 41 Ohio St. 2d 51, approved and followed.)

However, nothing in the opinion suggests this is a matter of federal or even Ohio constitutional law. Rather, it seems to be based on a plain reading of the statute.

State courts have the authority, even the duty, to rely on propositions of federal constitutional law when relevant questions are presented to them, but it does not appear that the defendant in Hester even suggested such a rule. Even if the Ohio Supreme Court had stated that findings of fact and conclusions of law were mandated by the Fourteenth Amendment, that would not have been sufficient to grant habeas relief, which can be based only on clearly established

---

[6] The syllabus rule, adopted in 1858, was abolished in 2002 when the Supreme Court of Ohio completely revised the Ohio Rules for the Reporting of Opinions. As of July 1, 2012, the relevant rule reads "All majority opinions of the Supreme Court shall have the same authority, whether issued per curiam or as an opinion authored by a justice and whether or not they have a syllabus."

constitutional precedent of the United States Supreme Court. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Brown v. Payton,* 544 U.S. 133, 134 (2005).

Adams aptly argues that a violation of state law can rise to the level of a due process violation. Habeas relief may be available where a violation of state law "amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008), *cert denied*, 129 S. Ct. 1991 (2009). "State law errors may warrant habeas relief if the errors 'rise for some other reason to the level of a denial of rights protected by the United States Constitution.'" *Hoffner v. Bradshaw*, 622 F.3d 487, 495 (2010), *quoting Barclay v. Florida*, 463 U.S. 939, 957-58 (1983).

But here the error of state law alleged is failure to make findings of fact and conclusions of law on a post-conviction petition. The requirement of separately stated findings of fact and con conclusions of law is not peculiar to Ohio Revised Code § 2953.21. For example, it is required by Fed. R. Civ. P. 52 in federal cases tried to the bench instead of a jury. But the Magistrate Judge is unaware of any situation in which that requirement has been imposed as a requirement of due process, either within the federal system or as imposed on the States through the Fourteenth Amendment.

In sum, Adams's second claim does not state a claim upon which relief can be granted in habeas corpus because no decision of the United States Supreme Court commands that result.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this

conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

July 12, 2018.

s/ *Michael R. Merz*<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).